CONSTANTINE CANNON LLP

NEW YORK | WASHINGTON | SAN FRANCISCO

**Marlene Koury**
415-639-4012
mkoury@constantinecannon.com

October 6, 2023

**VIA CM/ECF**

The Honorable R. Brooke Jackson
U.S. District Court of the District of Colorado
Alfred A. Arraj U.S. Courthouse,
Courtroom A902, 901 19th Street
Denver, CO 80294

RE: *United States ex rel. Fiorisce LLC v. Perdoceo et al.* (No. 1:21-cv-00573)

Dear Judge Jackson,

We write in response to Defendants' September 29, 2023 letter (D. Ltr.), in which they seek permission to file two motion to dismiss briefs. Relator respectfully requests that the Court deny Defendants' request and allow this case to move forward expeditiously.

### 1. The Public Disclosure Bar Does Not Apply to Relator's Allegations

The "public disclosure bar" does not apply here because none of the central allegations in the Amended Complaint have been disclosed publicly, and even if they were, Relator satisfies the "original source" exception under 31 U.S.C. § 3730(e)(4)(B).

<u>There have been no public disclosures.</u> Relator's allegations center on Defendants' fraudulent scheme to provide a fraction of the educational content – measured in credit hours – required by federal law, knowingly submit false claims to the government based on false credit hours, and falsify documents to make their courses appear to meet federal requirements. Am. Compl. ¶¶ 2-8. None of the three publications Defendants identify could have plausibly put the government "on the trail" of this fraud. *United States ex rel. Reed v. KeyPoint Gov't Solutions*, 923 F.3d 729, 745 n.8 (10th Cir. 2019).

First, Defendants cite a 2012 Congressional report discussing a multitude of unrelated problems at for-profit colleges generally. The factual findings in this report almost entirely predate the credit-hour regulations at issue. (D. Ltr. p.2). Second, Defendants quote from two articles by the same author that criticize Defendants' recruiting tactics and the ease of their courses. *Id.* Relator's allegations go far beyond these generalized quality concerns, which do not come close to providing the "specific details about the fraudulent scheme" that would alleviate the government's "need to comb through myriad transactions performed by various types of entities in search of potential fraud." *In re Nat. Gas Royalties*, 562 F.3d 1032, 1042 (10th Cir. 2009).

150 CALIFORNIA STREET, SUITE 1600, SAN FRANCISCO, CA 94111  TELEPHONE: 415-639-4001  FACSIMILE: 415-639-4002  HTTP://WWW.CONSTANTINECANNON.COM

A LIMITED LIABILITY PARTNERSHIP

CONSTANTINE CANNON LLP

NEW YORK | WASHINGTON | SAN FRANCISCO

Relator is an "original source." Even if there had been public disclosures, Relator satisfies the "original source" exception by providing detailed, high-value information that "materially added" to any disclosures. *Reed*, 923 F.3d at 763 (finding relator met "original source" exception when allegations "materially added" details about a "new scheme" in well-known area of fraud). Defendants do not meaningfully contest this point in their letter. Most notably, as in *Reed*, Relator has provided critical new scienter evidence regarding the *knowing* misconduct of Defendants' senior employees. *See* Am. Compl. ¶¶ 79-87, 108-113.

### 2. Relator's Amended Complaint Readily Satisfies Rule 12(b)(6) and Rule 9(b)

The Court should also reject Defendants' proposed motion under Rules 12(b)(6) and 9(b). Rule 9(b) is intended "to afford defendant[s] fair notice of plaintiff's claims and the factual ground upon which [they] are based." *United States ex rel. Polukoff v. St. Mark's Hospital*, 895 F.3d 730, 745 (10th Cir. 2018) (citation omitted). "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Id.* (citation omitted). Relator's detailed allegations provide more than sufficient notice under Rule 9(b).

Relator's complaint identifies numerous express false certifications. Defendants only challenge an express false certification theory of False Claims Act liability. There are detailed allegations of how Defendants expressly certified compliance with federal credit-hour requirements. CTU and AIU executed Program Participation Agreements (PPA) that expressly certify their compliance with all statutory and regulatory provisions under Title IV, including the credit-hour requirements. Am. Compl. ¶ 26; 34 C.F.R. § 668.14(a)(1), (b)(1) (By entering into a PPA with the DOE, the educational institution agrees and certifies that "[i]t will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority . . . ."); *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 n.1 (9th Cir. 2006) ("[T]he University signed the [PPA], thus making an express statement of compliance."). Each time Defendants drew Title IV funds from the "G5" system, they again certified compliance with the PPAs and thus their obligation to meet all Title IV requirements. Am. Compl. ¶ 48; *United States v. FastTrain II Corp.*, No. 12-cv-21431, 2017 WL 606346, at *10 (S.D. Fla. Feb. 15, 2017) ("Each [G5] draw-down falsely certified FastTrain's compliance with DOE regulations.").

Perdoceo caused the submission of AIU's and CTU's false claims and records. Perdoceo is liable for causing the false claims, statements, and records made by CTU and AIU. 31 U.S.C. § 3729(a)(1)(A), (B). To establish causation, Plaintiff must only allege that Perdoceo committed some "affirmative act" beyond "mere passive acquiescence" that caused or assisted the fraudulent scheme. *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714-15 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019).

2

CONSTANTINE CANNON LLP

NEW YORK | WASHINGTON | SAN FRANCISCO

Relator's complaint is replete with affirmative acts by Perdoceo to direct and facilitate the alleged fraud: (1) Perdoceo, through its VP of Technology, Judy Komar, and other employees, designed the Intellipath technology central to the fraud, including the "Determine Knowledge" function that skips students past much of the meager course content, Am. Compl. ¶¶ 17, 49, 52, 78; (2) Ms. Komar directs Intellipath's use at CTU and AIU, *id.*; (3) Ms. Komar and Perdoceo were heavily involved in devising the plan to inflate Intellipath hours for the credit ascription project at CTU, *id.* ¶¶ 55, 75, 81; (4) Ms. Komar provided the inflated Intellipath numbers to input on the Credit Ascription Worksheets ("CAWs"), *id.* ¶ 87; (5) Ms. Komar and Perdoceo's Vice Provost knew the CAW Intellipath hours were inflated but continued using them, *id.* ¶ 108; and (6) the Vice Provost admitted the only way to meet credit hour requirements was to "manipulate" the Intellipath data, *id.* ¶ 110. Perdoceo thus was central to the scheme (by developing and implementing Intellipath) and covering it up (by falsifying CAWs it knew served as the basis for assigning credit hours). Its conduct far exceeds "mere passive acquiescence." These detailed allegations are more than sufficient to provide Perdoceo with the notice required by Rule 9(b).

Relator also plead fraud with specificity as to AIU. The same is true for AIU. The complaint explains how Ms. Komar oversees the identical use of Intellipath at CTU *and AIU*, *id.* ¶¶ 49-50; AIU marketed Intellipath as functioning in the same manner as at CTU, *id.*; Relator knows from attempts to stop the fraud at CTU that AIU engaged in the same credit hour scheme, *id.* ¶ 75; AIU provides minimal course content and uses Intellipath in most of its courses, *id.* ¶ 89; AIU employs Determine Knowledge and other tactics to skip students past lessons, fails to provide the minimum number of learning hours to qualify for student aid, and inflates the number of hours it reports to make up for their massive credit-hour shortfall. *Id*. AIU employs a mechanical approach to falsifying Intellipath hours by counting Intellipath time as a set, high time per lesson, despite knowing the actual time students spend is substantially shorter, even zero. *Id.* ¶ 91. AIU then fraudulently obtained hundreds of millions of dollars in financial aid. *Id.* ¶ 92.

Relator respectfully requests the Court deny Defendants' request to submit one, much less two, motions to dismiss. Relator's complaint pleads all the required elements of the False Claims Act.

Sincerely,

    s/s Marlene Koury
Marlene Koury
CONSTANTINE CANNON LLP
150 California Street, Suite 1600
San Francisco, CA 94111
Tel: (415) 639-4001
Fax:  (415) 639-4002
mkoury@constantinecannon.com

cc: All Counsel of Record (via ECF)

150 California Street, Suite 1600, San Francisco, CA 94111  Telephone: 415-639-4001  Facsimile: 415-639-4002  http://www.constantinecannon.com

A Limited Liability Partnership