**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 4, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES ex rel. FIORISCE, LLC,

      Plaintiff - Appellee,

v.

COLORADO TECHNICAL
UNIVERSITY, INC.,

      Defendant - Appellant,

and

PERDOCEO EDUCATION
CORPORATION; AMERICAN
INTERCONTINENTAL UNIVERSITY,
INC.,

      Defendants.

------------------------------

THE ANTI-FRAUD COALITION,

      Amicus Curiae.

No. 24-1047

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:21-CV-00573-RBJ)**

_____

Michael T. Raupp, Husch Blackwell LLP, Kansas City, MO, (Martin M. Loring, Husch
Blackwell LLP, Kansas City, MO; Joseph S. Diedrich, Husch Blackwell LLP,

Washington, D.C.; Kyle P. Seelbach, Kate Ledden, Tanner M. Cook, and Madeine
Townsley, Husch Blackwell LLP, St. Louis, MO; Gregg N. Sofer, Husch Blackwell LLP,
Austin, TX, with him on the briefs) for Defendant – Appellant.

Max Voldman, Whistleblower Partners LLP, Washington, D.C., (Marlene Koury,
Constantine Cannon LLP, San Francisco, CA; Gordon Schnell, Constantine Cannon LLP,
New York, NY; Christopher McLamb, Whistleblower Partners LLP, Washington, D.C. on
the brief) for Plaintiff – Appellee.

Jacklyn N. DeMar, The Anti-Fraud Coalition and Tejinder Singh, Sparacino PLLC,
Washington, D.C., filed an amicus curiae brief in support of United States ex rel.
Fiorisce, LLC.

_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

Fiorisce, a limited liability company, brought a qui tam suit against for-profit

college Colorado Technical University ("CTU") for violations of the False Claims

Act ("FCA"), 31 U.S.C. §§ 3729-3733.  CTU moved to dismiss Fiorisce's claim,

arguing that the FCA's public disclosure bar precludes the suit.  The district court

denied CTU's motion.  CTU seeks interlocutory review of that ruling, urging us to

exercise jurisdiction under the "collateral order" exception to the final judgment rule.

We conclude the collateral order doctrine does not apply and dismiss CTU's appeal

for lack of jurisdiction under 28 U.S.C. § 1291.

## I.   BACKGROUND

### A.   *Factual Allegations*

Fiorisce's amended complaint alleged as follows.  A 2011 Department of

Education regulation for financial aid programs at qualifying universities provided

2

that, for each credit hour, a school must provide educational content equivalent to one hour of classroom instruction and two hours of out-of-class work per week. Program Integrity Issues, 75 Fed. Reg. 66832, 66946 (Oct. 29, 2010) (codified at 34 C.F.R. § 600.2 (2011)). The Department of Education stated that standardizing credit hours would help ensure "that a credit hour has the necessary educational content to warrant the amounts of Federal funds that are awarded to participants in Federal funding programs, and that students at different institutions are treated equitably in the awarding of those funds." App., Vol. 1 at 95; U.S. Dep't of Education, GEN-11-06, Guidance to Institutions and Accrediting Agencies Regarding a Credit Hour as Defined in the Final Regulations Published on October 29, 2010 (Mar. 11, 2011).

In 2012, CTU's parent company, Perdoceo, launched a proprietary online learning platform at CTU called Intellipath. Fiorisce alleged that CTU's Intellipath courses contain "nowhere near the amount of educational content required for federal aid." App., Vol. 1 at 14. "[T]o further minimize the hours students spend to complete CTU . . . courses," *id.*, Intellipath "automatically skipp[ed] students through significant portions of course work by having them pass rudimentary diagnostic tests." *Id.* at 14-15. "Students never ma[de] up the missing hours and content of these bypassed lessons and [CTU] [did] not provide any replacement content to make up for the [credit hour content] shortfall." *Id.* at 27. CTU "then count[ed] towards the minimum learning hours required under federal credit hour requirements all the content missing from the course and that Intellipath directs students to avoid."

*Id.* at 28. Further, Fiorisce alleged CTU "falsified learning hour calculations to support its assignment of credit hours and its claims for payment under the federal student aid programs to which they would not otherwise be entitled." *Id.* at 15.

After CTU's accrediting agency audited it in 2017, CTU submitted inflated learning hours by reporting the Intellipath data only from "a handful of cherry-picked outlier students" who took the longest to complete the course material. *Id.* at 31. This gave the false appearance that CTU was complying with federal credit hour regulations, while instead CTU was providing most students only a "fraction" of the educational content the Department of Education required for the funding CTU received. *Id.* at 46.

Fiorisce's sole principal learned about the alleged fraud while working as a CTU faculty member. Fiorisce was created shortly before it filed this case to protect this individual's identity.

### B. *Procedural History*

Fiorisce filed its qui tam suit in federal district court, alleging that CTU and others had violated the FCA by misrepresenting their compliance with federal credit hour requirements and fraudulently billing the government for educational content that was never provided to students.[1] The complaint refers to Fiorisce and its principal interchangeably as the "relator."

---

[1] Perdoceo and American Intercontinental University were defendants in district court, which dismissed the claims against both. Those claims are not at issue in this appeal.

CTU moved to dismiss Fiorisce's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. It argued the FCA's public disclosure bar precluded the suit because Fiorisce's fraud allegations were substantially the same as those previously publicly disclosed. Further, CTU contended Fiorisce did not meet the original source exception to the public disclosure bar.

The district court denied CTU's motion to dismiss because Fiorisce's allegations were not "substantially the same" as those previously disclosed. App., Vol. 7 at 1328. The court said that, although "[t]here is no question but that [CTU] and other similar institutions have been on the government's radar for years," the prior disclosures did not capture Fiorisce's "specific claims concerning misrepresentation of credit hours and the use of Intellipath . . . by CTU to defraud students and the government." *Id.* at 1328-29. The court further said that, even if the public disclosure bar applied, Fiorisce likely qualified for the "original source" exception under § 3730(e)(4)(B).

CTU appealed the denial of its motion to dismiss. Fiorisce moved to dismiss the appeal for lack of appellate jurisdiction. Aplee. Mot. to Dismiss Br. at 1, Dkt. at 12. CTU argues we have interlocutory appellate jurisdiction under the collateral order doctrine. Aplt. Resp. in Opp. to Aplee. Mot. to. Dismiss Br. at 1, Dkt. at 30.

C. ***Legal Background***

1. **The Collateral Order Doctrine**

a. *Final judgment rule – 28 U.S.C. § 1291*

Title 28 U.S.C. § 1291 vests courts of appeals with jurisdiction over appeals from "final decisions of the district courts." Section 1291's final judgment rule

prevents "piecemeal, prejudgment appeals . . . [that] undermine[] efficient judicial

administration and encroach[] upon the prerogatives of district court judges, who

play a special role in managing ongoing litigation." *Mohawk Indus. Inc. v.

Carpenter*, 558 U.S. 100, 106 (2009) (quotations omitted); *United States v. Martinez-

Haro*, 645 F.3d 1228, 1231 (10th Cir. 2011). Denials of motions to dismiss are

generally not appealable final orders under § 1291. *See Abney v. United States*,

431 U.S. 651, 663 (1977).

     b. Cohen *test*

     The collateral order doctrine, first recognized in *Cohen v. Beneficial Industrial

Loan Corp.*, 337 U.S. 541 (1949), allows a "small class" of interlocutory orders to be

immediately reviewable under § 1291. *Id.* at 546. To fall within this small class, the

non-final order must "[1] conclusively determine the disputed question, [2] resolve

an important issue completely separate from the merits of the action, and [3] be

effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v.

Livesay*, 437 U.S. 463, 468 (1978).

     The Supreme Court has described these conditions as "stringent," *Will v.

Hallock*, 546 U.S. 345, 349 (2006) (quoting *Digit. Equip. Corp. v. Desktop Direct,

Inc.*, 511 U.S. 863, 868 (1994)), to protect against "overpower[ing] the substantial

finality interests" that the limit on our jurisdiction aims to further, *id.* at 350. All

three *Cohen* factors must be met for a class of interlocutory orders to be immediately

appealable. *Digit. Equip.*, 511 U.S. at 869 & n.3. Courts look at "the entire category

to which a claim belongs" instead of "engag[ing] in an individualized jurisdictional

inquiry" with an eye toward whether "the litigation at hand might be speeded, or a
particular injustice averted." *Mohamed v. Jones*, 100 F.4th 1214, 1218
(10th Cir. 2024) (quotations omitted).

      i.  <u>High burden and limited scope</u>

      The party seeking to add to the categories of collateral order doctrine cases
bears a "heavy burden to show expansion of the collateral order doctrine is
warranted." *Id.* at 1224.  Thus, "[w]e must heed the Supreme Court's 'increasingly
emphatic instructions that the class of cases capable of satisfying th[e] stringent
[*Cohen*] test should be understood as small, modest, and narrow.'" *Id.* at 1225
(quotations omitted) (quoting *United States v. Wampler*, 624 F.3d 1330, 1334
(10th Cir. 2010)).  "The types of orders that fall under the collateral order doctrine
'require only two hands to count.'" *Id.* at 1218 (quotations omitted).  "[T]he
'narrow' exception should stay that way and never be allowed to swallow the general
rule that a party is entitled to a single appeal, to be deferred until final judgment has
been entered." *Digit. Equip.*, 511 U.S. at 868 (quotations omitted); *see also Tucker v.
Faith Bible Chapel Int'l*, 36 F.4th 1021, 1033 (10th Cir. 2022) ("Immediate appeals
under the collateral order doctrine are disfavored; they 'are the exception, not the
rule' . . . ." (quoting *Johnson v. Jones*, 515 U.S. 304, 309 (1995)).

      In 1990, Congress added "special force" to the Court's admonition that "the
class of collaterally appealable orders must remain 'narrow and selective.'" *Mohawk
Indus.*, 558 U.S. at 113 (quotations omitted).  It amended the Rules Enabling Act to
authorize the Supreme Court to adopt rules "defin[ing] when . . . a district court

[order] is final for the purposes of appeal under section 1291." Federal Courts Study Committee Implementation Act of 1990, Pub. L. No. 101-650, § 315, 104 Stat. 5104, 5115 (codified at 28 U.S.C. § 2072(c)).[2] Since then, the Supreme Court has "declared that Congress's choice to prefer rulemaking to judicial decision in this area 'warrant[s] the Judiciary's full respect.'" *Mohamed*, 100 F.4th at 1227 (quoting *Mohawk Indus.*, 558 U.S. at 114); *see also Wampler*, 624 F.3d at 1338 ("Out of deference to the rubric Congress has created . . . any request for expansion of the *Cohen* doctrine should be directed to the rules committee, not this court.").

CTU thus bears a "heavy burden to show expansion of the collateral order doctrine is warranted." *Mohamed*, 100 F.4th at 1224. The "justification for immediate appeal" must be "sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus.*, 558 U.S. at 107.

## ii. *Cohen* third factor

For the third *Cohen* factor—whether the order is effectively unreviewable on appeal from final judgment—"the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Id*. This factor may be satisfied when "the collaterally appealing party [is] vindicating or claiming a right to avoid trial,"

---

[2] *See also* Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 101, 106 Stat. 4506, 4506 (codified at 28 U.S.C. § 1292(e)) (authorizing the Court to "prescribe rules, in accordance with section 2072 . . . , to provide for an appeal of an interlocutory decision to the courts of appeals").

because "unless the order to stand trial [is] immediately appealable, the right would
be effectively lost." *Will*, 546 U.S. at 350-51.[3]  The Supreme Court has long
recognized orders rejecting immunity from trial as within the collateral order
doctrine's scope.  *See, e.g.*, *Abney*, 431 U.S. at 660 (double jeopardy); *Nixon v.
Fitzgerald*, 457 U.S. 731, 742 (1982) (absolute immunity); *Mitchell v. Forsyth*,
472 U.S. 511, 526, 530 (1985) (qualified immunity).

In *Will v. Hallock*, the Supreme Court clarified that showing a right to avoid
trial alone—even immunity—is insufficient to justify expanding the collateral order
doctrine.  It explained that, when the Court has allowed interlocutory appeal of a
district court's immunity denial, "some particular value of a high order was marshaled
in support of the interest in avoiding trial:  honoring the separation of powers, preserving
the efficiency of government and the initiative of its officials, respecting a State's

---

[3] The Supreme Court also has extended the collateral order doctrine to orders
that would be moot following judgment.  *See, e.g.*, *Sell v. United States*, 539 U.S.
166, 177 (2003) (orders permitting the government to force a defendant to take
antipsychotic drugs); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 10-12 (1983) (stay orders with the sole purpose of surrendering
jurisdiction of federal suit to state court).

In *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659
(10th Cir. 2018), this court said that the district court's *Erie* decision not to apply a
state anti-SLAPP statute in a diversity action was immediately appealable because it
presented an "abstract question of federal law" that was completely separate from the
merits.  *Id.* at 665.  We said the statute's purpose of "creat[ing] a right to expeditious
trial and appellate process" would be lost if the "Defendants would have already
incurred the ordinary time and expense of litigation."  *Id.* at 666.  This court clarified
in *Coomer v. Make Your Life Epic LLC*, 98 F.4th 1320 (10th Cir. 2024), that the
district court's denial of a motion to dismiss based on its application of an anti-
SLAPP statute was not immediately appealable under the collateral order doctrine.
*Id.* at 1329.

dignitary interests, and mitigating the government's advantage over the individual." 546 U.S. at 352-53. In other words, "it is not the mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable" under the third *Cohen* factor. *Id.* at 353.

Further, the Court has cautioned that "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'" *Digit. Equip. Corp.*, 511 U.S. at 873. "Allowing immediate appeals to vindicate every such right" would swallow § 1291's final decision rule. *Id.* Courts thus view claims of a "right not to be tried" to avoid the final judgment rule "with skepticism, if not a jaundiced eye." *Id.*

### 2. **FCA and Public Disclosure Bar**

#### a. *FCA claims*

The FCA authorizes claims against those who defraud the federal government. *See* 31 U.S.C. § 3729. "Relators" having information regarding fraud may sue for damages and civil penalties on behalf of the United States in qui tam suits. *Id.* § 3730(b), (d); *see also Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000). When filed, a qui tam complaint remains under seal for at least 60 days while the federal government investigates the fraud allegations. 31 U.S.C. § 3730(a), (b)(2). When that investigation ends, the government may intervene. *Id.* § 3730(b)(4). It may still intervene after the 60-day period "upon a showing of good cause." *Id.* § 3730(c)(3).

When the government intervenes, the qui tam relator generally may continue as a party, though the government assumes "primary responsibility" for the case's "prosecuti[on]." *Id.* § 3730(c)(1). Any time after intervening, the government may elect to settle or dismiss the action, even over the relator's objections. *Id.* § 3730(c)(2)(A); *see United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 429-30 (2023) (holding the government may dismiss an action under § 3730(c)(2)(A) any time after intervening).[4]

The government may also decline to intervene and instead pursue a claim through an "alternate remedy . . . including any administrative proceeding to determine a civil money penalty."[5] *Id.* § 3730(c)(5). Relators retain the right to

---

[4] Even if the government does not intervene, it "retains an interest in the suit, and possesses specific rights," *Polansky*, 599 U.S. at 430, such as the right to stay some discovery, 31 U.S.C. § 3730(c)(4), and the right to share in the relator's recovery, *id.* § 3730(d)(2).

[5] The FCA does not define the proceedings that qualify as an alternate remedy. "[C]ircuit and district courts have taken different approaches in deciding what constitutes an alternate remedy, but typically read the statute broadly." Joel M. Androphy & Carla Lassabe, *Federal False Claims Act and Qui Tam Litigation* § 13.02, LEXIS (database updated Nov. 2024); *see, e.g.*, *United States ex rel. Barajas v. Northrop Corp.*, 258 F.3d 1004, 1006, 1010-12 (9th Cir. 2001) (holding a settlement agreement initiated by the Air Force with a defense contractor to resolve a suspension/debarment proceeding was an alternate remedy because it was substantially the same remedy as could have been obtained if the government intervened in the FCA action); *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 892 F. Supp. 2d 341, 344 (D. Mass. 2012) (holding the government's separate settlement and release of claims, extinguishing relator's claims, was an alternate remedy); *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 649-50 (6th Cir. 2003) (holding the government's settlement with defendant to repay "funds lost from conduct asserted in Relator's *qui tam* action" was an alternate remedy).

11

share in the government's recovery from an alternate remedy to the same extent "as such person would have had if the action had continued under [the FCA]."  *Id.*

b.  *Public disclosure bar*

The public disclosure bar limits a relator's right to bring a qui tam suit.  It provides that a "court shall dismiss an action" when "substantially the same" allegations as those in the action have already been disclosed in certain public fora. *Id*. § 3730(e)(4)(A).  The bar aims to "strike 'the golden mean between' encouraging 'whistle-blowing insiders with genuinely valuable information' to come forward while discouraging 'opportunistic plaintiffs who have no significant information to contribute of their own.'"  *United States ex rel. Reed v. Keypoint Gov't Sols.*, 923 F.3d 729, 738 (10th Cir. 2019) (quoting *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 571 (10th Cir. 1995)); *see also Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004).

Even if the defendant shows the public disclosure bar applies, the suit may still proceed if (1) the government intervenes, (2) the government opposes the dismissal, or (3) the relator is an original source of the information.  31 U.S.C. § 3730(e)(4)(A).[6]

---

[6] A relator is an "original source" when it either "[1] voluntarily disclosed to the Government the information on which allegations . . . in the claim are based" before the public disclosures were made, or "[2] has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing [the qui tam] action."  31 U.S.C. § 3730(e)(4)(B) (footnote omitted).

c.  *Relator's recovery*

If the suit succeeds, the qui tam relator receives a percentage of the recovery. *Id.* § 3730(d)(1).  When the government has not intervened and only the relator pursued the action, the FCA instructs the court to award the relator 25 to 30 percent of the proceeds.  *Id.* § 3730(d)(2).  When the government has intervened, the relator's share is 15 to 25 percent, "depending upon the extent to which the person substantially contributed to the prosecution of the action," § 3730(d)(1).[7]  When the government seeks and obtains an "alternate remedy," the relator has "the same rights" to recover from the proceeds "as such person would have had if the action had continued" under the FCA.  *Id.* § 3730(c)(5).

## II. **DISCUSSION**

CTU argues the denial of a motion to dismiss under the FCA's public disclosure bar qualifies for immediate review under *Cohen*'s third factor because the

---

[7] But the share in this instance is only 0 to 10 percent for relators who survive the public disclosure bar and whose claims were "partly based on public information."  *United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d 548, 553 n.3 (10th Cir. 1992); 31 U.S.C. § 3730(d)(1) (instructing courts to "tak[e] into account the significance of the information and the role of the person bringing the action in advancing the case to litigation" when deciding the size of award).

This provision was intended to reduce the recovery of original source relators who survive the public disclosure bar but "who bring cases based on information already publicly disclosed where only an insignificant amount of that information stemmed from that original source."  *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 106 (3d. Cir. 2000) (quoting 132 Cong. Rec. 28580 (1986)).

denial is "effectively unreviewable" on appeal from final judgment.[8]  It contends the public disclosure bar not only precludes liability but also is a right to avoid trial. CTU further argues that denial of this right "would imperil [the] substantial public interest[s]" of separation of powers, efficiency, and government initiative.  *Will*, 546 U.S. at 353.  But for the reasons stated below, CTU has not met its heavy burden to expand the collateral order doctrine to include denials of motions to dismiss under the FCA's public disclosure bar.

## A.  *Right to Avoid Trial*

As noted above, we must assess CTU's claim that the public disclosure bar is a right to avoid trial with "skepticism" because "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'"  *Digit. Equip.*, 511 U.S. at 873.  "Allowing immediate appeals to vindicate every such right" would swallow the final judgment rule.  *Id.*

We disagree with CTU that the public disclosure bar is a right to avoid trial. Even when information underlying the fraud allegations was previously disclosed and the bar applies, the FCA action may continue if (1) the government intervenes, (2) the government opposes the motion to dismiss, or (3) the relator is an original

---

[8] The parties do not contest that the first and second *Cohen* factors are met— that the district court's order (1)  "conclusively determine[d] the disputed question," and (2) "resolve[d] an important issue completely separate from the merits of the action."  *Coopers & Lybrand*, 437 U.S. at 468.  We do not address these factors. CTU's appeal fails on the third.  *See Digit. Equip.*, 511 U.S. at 869 & n.3.

source of the information.  31 U.S.C. § 3730(e)(4)(A).  The bar therefore does not guarantee the defendant will avoid trial.

Rather than preventing trial, the public disclosure bar was designed to discourage undeserving relators from bringing qui tam suits that do not aid the government in combatting fraud.  *See Reed*, 923 F.3d at 738 (stating the public disclosure bar aims to "encourag[e] whistle-blowing insiders with genuinely valuable information to come forward while discouraging opportunistic plaintiffs") (quotations omitted).  This purpose may be met after final judgment when the appellate court reviews the denial of a public disclosure bar motion.

CTU has not shown that erroneous denials of public disclosure bar motions cannot be redressed on appeal from a final judgment.  It therefore stands in the same posture as litigants that must follow the final judgment rule.  *See Mohawk Indus.*, 558 U.S. at 108-09 ("We routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system.").  As the Supreme Court explained in *Digital Equipment*, erroneous rulings "may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . [b]ut if immediate appellate review were available every such time, Congress's final decision rule would end up a pretty puny one."  511 U.S. at 872.

## B. *Substantial Public Interests*

Even if the public disclosure bar were a right to avoid trial, CTU must marshal "some particular value of a high order . . . in support of the interest in avoiding trial."

*Will*, 546 U.S. at 352. CTU contends that denying immediate review of these orders raises concerns about (1) separation of powers, (2) jurisdiction, (3) government efficiency, and (4) government initiative. We disagree. Dismissal here for lack of appellate jurisdiction would not "imperil a substantial interest" or "some particular value of high order." *Id.* at 352-53; *Digit. Equip.*, 511 U.S. at 881.

## 1. Separation of Powers

CTU contends the *Cohen* doctrine should apply here based on separation of powers. We again disagree.

### a. *Legal background*

We have rejected a "generalized separation of powers rationale to expand the collateral order doctrine," *Mohamed*, 100 F.4th at 1231, requiring instead that the concerns be "commensurate with [those such as] intruding on essential Presidential prerogatives, or posing unique risks to the effective functioning of government, [or] resolv[ing] a constitutional confrontation between two branches of the Government." *Id.* at 1231-32 (quotations omitted).

Even when "compelling public ends rooted in . . . the separation of powers" could support an extension of the collateral order doctrine, *Will*, 546 U.S. at 352 (citation and quotations omitted), not "every kind of district court order that raises a separation of powers issue is effectively unreviewable after final judgment under the third *Cohen* factor," *Mohamed*, 100 F.4th at 1231. In *Nixon v. Fitzgerald*, the Supreme Court expanded the collateral order doctrine based on a separation of

powers concern, and that was based on "unique risks to the effective functioning of government" arising from the denial of presidential immunity.  457 U.S. at 751-52.

    b.  *CTU's arguments*

CTU's separation-of-powers arguments lack merit.

First, CTU cites a Supreme Court dissent and concurrence opining that FCA qui tam suits raise concerns about the constitutional status of relators under the Appointments Clause.  *See* Aplt. Mot. to Dismiss Br. in Opp. at 20 (citing *Polansky*, 599 U.S. at 449-52 (Thomas, J., dissenting); *id.* at 442 (Kavanaugh, J., concurring)).  But this view has never garnered a Court majority.

Second, CTU contends immediate review of public disclosure denials is "necessary to vindicate Congress's careful choices" about which relators may bring qui tam suits.  *Id.* at 21.  These choices, CTU argues, implicate separation of powers because qui tam suits arise from a limited transfer of executive branch authority to relators, and the FCA's public disclosure bar limits that authority.  *See* Oral Arg. at 07:59–10:09; *see also* Aplt. Mot. to Dismiss Br. in Opp. at 12 n.2.  But CTU has failed to explain why the public disclosure bar and these "careful choices" cannot be vindicated on appeal from final judgment.  Federal statutes creating private rights of action frequently include Congress's "careful choices" that may preclude relief through denials of pretrial motions to dismiss, but courts have found these denials effectively reviewable after final judgment.  *See, e.g.*, *Will*, 546 U.S. at 347 (holding denial of the Federal Tort Claims Act's judgment bar not appealable under the collateral order doctrine); *see also Decker v. IHC Hosps., Inc.*, 982 F.2d 433, 436-37 (10th Cir. 1992) (holding the denial of "immunity

17

from liability" under the Health Care Quality Improvement Act not immediately appealable).

Finally, CTU misses the countervailing point that its "requested expansion of the collateral order doctrine to a new class of cases [] raises the separation of powers concern of how far courts should go in carving out exceptions to the congressionally enacted final judgment rule." *Mohamed*, 100 F.4th at 1232-33.

CTU's separation of powers arguments are therefore "insufficient to meet [its] burden" of showing that public disclosure bar denials "should receive the same consideration for interlocutory review as orders denying presidential immunity—the only cases in which the Court has expanded the collateral order doctrine based on separation of powers concerns." *Id*. at 1232.

## 2. **Jurisdictional Bar**

CTU also argues the public disclosure bar is jurisdictional because it removes a relator's "partial assignment of the Government's [FCA] claims and thereby [the relator] los[es] his standing to sue." Aplt. Reply Br. at 6 n.3 (quoting *United States ex rel. Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C.*, 2009 WL 10667702, at *3 (S.D. Fla. Mar. 24, 2009)). It is unclear whether CTU makes this argument to bolster its separation-of-powers argument or whether it stands on its own. Either way, it lacks merit.

First, CTU has not shown the public disclosure bar is jurisdictional. In 2010, Congress changed the FCA's public disclosure provision from "No court shall have jurisdiction over an action under this section," 31 U.S.C. § 3730(e)(4)(A) (2008), to

"The court shall dismiss an action . . . if substantially the same allegations . . . were publicly disclosed." *Id.* § 3730(3)(4)(A) (2010). Congress thus removed jurisdictional language from the statute. And Congress must "clearly state[] that a threshold limitation on a statute's scope shall count as jurisdictional." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013); *Fort Bend County v. Davis*, 587 U.S. 541, 550 (2019). Because the current public disclosure bar provision lacks such a clear statement, we "treat the [public disclosure bar] as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 516.[9]

Second, even if the bar were jurisdictional, dismissals for lack of jurisdiction are not generally entitled to interlocutory review under the collateral order doctrine. *See In re Tri-Valley Distrib., Inc.*, 533 F.3d 1209, 1216 (10th Cir. 2008) ("As a general rule, the 'denial of a motion to dismiss, *even when the motion is based upon jurisdictional grounds*, is not immediately appealable." (quoting *In re Magic Circle Energy Corp.*, 889 F.2d 950, 954 (10th Cir. 1989))); *see also Gray v. Baker*, 399 F.3d 1241, 1245

---

[9] Although this court has not previously decided the issue, *see Reed*, 923 F.3d at 737 n.1, every appellate court that has considered whether FCA's post-amendment public disclosure bar is jurisdictional has concluded it is not. *See United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 80 (2d Cir. 2017); *United States ex rel. Moore & Co. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 300 (3d Cir. 2016); *United States ex rel. Beauchamp v. Academic Training Ctr.*, 816 F.3d 37, 40 (4th Cir. 2016); *Abbott v. BP Exploration & Production, Inc.*, 851 F.3d 384, 387 n.2 (5th Cir. 2017); *United States ex rel. Advocates for Basic Legal Equality, Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 433 (6th Cir. 2016); *United Prather v. AT&T, Inc.*, 847 F.3d 1097, 1102-03 (9th Cir. 2017); *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 810 (11th Cir. 2015). We join in that conclusion.

(10th Cir. 2005) ("[T]he fact that the district court's order arguably concerns its own

subject matter jurisdiction . . . is not sufficient, standing alone, to bring the district court's

order within the scope of the collateral order doctrine.").

3.  **Government Efficiency**

CTU contends that review of public disclosure bar denials after final judgment

would result in "erroneous subjection to sprawling, protracted litigation" for the

parties.  Aplt. Reply Br. at 15.  But this argument assumes that most district court

denials of public disclosure bar motions to dismiss are wrong, and it ignores the

inefficiency of piecemeal interlocutory appeals when the denials are correct.  CTU's

proposed expansion of the collateral order doctrine therefore threatens to "undermine

the efficiency rationale underlying the final judgment rule."  *Mohamed*, 100 F.4th at

1228-29; *see also Mohawk Indus.*, 558 U.S. at 106 ("Permitting piecemeal,

prejudgment appeals . . . undermines efficient judicial administration." (quotations

omitted)).

4.  **Government Initiative**

CTU also asserts that keeping erroneous public disclosure bar denials in place

until appellate review after final judgment may chill the government's initiative to

combat alleged fraud through alternate proceedings.  Aplt. Mot. to Dismiss Br. in

Opp. at 22.  To help understand this argument, we provide additional background on

FCA claims.

a. *Legal background*

After a relator files an FCA lawsuit, the government "may elect to pursue its claim through any alternate remedy," such as administrative proceedings, rather than intervene in the action. 31 U.S.C. § 3730(c)(5); *see also Bledsoe*, 342 F.3d at 649. If the government declines to intervene and pursues an alternate remedy, the relator may proceed in the FCA action on its own. 31 U.S.C. § 3730(b)(4)(B), (c)(3); *see also Bledsoe*, 342 F.3d at 648 ("[A] relator's participation rights [in the FCA case] are preserved when the government pursues the relator's claims through any means alternative to intervening in the *qui tam* action."). Even when the government pursues an alternate remedy, the qui tam relator may still be entitled to a portion of the recovery from the alternate proceedings to the same extent as if the government had proceeded in the FCA action. 31 U.S.C. § 3730(c)(5), (d)(1).

b. *CTU's argument*

As best we can tell, CTU suggests that, after a district court denies a public disclosure bar motion, the government may lack incentive to pursue a concurrent fraud claim in alternate proceedings. According to CTU, without prompt interlocutory review of the denial, the government might be hesitant because it would not know whether it may have to share its recovery if it chooses to pursue an alternate remedy. As noted above, a qui tam relator subject to the public disclosure bar has no right to alternate remedy proceeds because the relator has only the "same

rights" in that proceeding as it would if the action had continued under the FCA.  31

U.S.C. § 3730(c)(5).[10]

CTU's chilling-effect theory is speculative and not "sufficiently weighty" to

expand the collateral order doctrine.  *Mohamed*, 100 F.4th at 1231.  By way of

comparison, preservation of officer initiative was one reason to allow interlocutory

appeals of qualified immunity denials because "the general costs of subjecting

officials to the risk of trial" would result in "distraction of officials from their

governmental duties, inhibition of discretionary action, and deterrence of able people

from public service."  *Mitchell*, 472 U.S. at 526 (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 816 (1982)).

By contrast, CTU does not show that keeping public bar disclosure denials in

place until final judgment would "unduly inhibit officials" from combatting fraud.

*Mohamed*, 100 F.4th at 1230 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638

(1987)).  It argues only that blocking interlocutory appeals may affect the

government's incentive to pursue alternate enforcement.

\*     \*     \*     \*

---

[10] *See United States ex rel. Newell v. City of St. Paul*, 728 F.3d 791, 799 (8th
Cir. 2013); *see also United States v. Molina Healthcare of N.M., Inc.*, 2024 WL
4002950, at \*24-27 (D.N.M. Aug. 30, 2024) (considering whether to deny a relator's
claim to alternate remedy proceeds under public disclosure bar, although relator had
survived the bar in the qui tam case, but ultimately determining it did not apply);
*Miller v. United States ex rel. Miller*, 110 F.4th 533, 550 (2d Cir. 2024); *Merena*, 205
F.3d at 106; *Donald v. Univ. of Cal. Bd. of Regents*, 329 F.3d 1040, 1044 (9th Cir.
2003).

CTU falls short of establishing the substantial public interests required for interlocutory review.

## III.  **CONCLUSION**

We grant the motion to dismiss for lack of jurisdiction and therefore dismiss this appeal.

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert                                                                 Jane K. Castro
Clerk of Court                                                                      Chief Deputy Clerk

March 04, 2025

Tanner Cook
Kate Ledden
Martin M. Loring
Michael T. Raupp
Kyle Seelbach
Madeline Townsley
Husch Blackwell
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105

Joseph Diedrich
Husch Blackwell
33 East Main Street, Suite 300
Madison, WI 53703

Gregg Sofer
Husch Blackwell
111 Congress Avenue, Suite 1400
Austin, TX 78701

**RE:     24-1047, Fiorisce v. Colorado Technical University, et al**
      Dist/Ag docket: 1:21-CV-00573-RBJ

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(d)(1), any petition for rehearing must be filed within 14
days after entry of judgment. Please note, however, that if the appeal is a civil case in
which the United States or its officer or agency is a party, any petition for rehearing must
be filed within 45 days after entry of judgment. Parties should consult both the Federal
Rules and local rules of this court with regard to applicable standards and requirements.
In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length,
and no answer is permitted unless the court enters an order requiring a response. *See* Fed.
R. App. P. Rule 40 and 10th Cir. R. 40 for further information governing petitions for
rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:      Jacklyn DeMar
         Marlene Koury
         Christopher McLamb
         Gordon Schnell
         Tejinder Singh
         Max Voldman

CMW/jm